IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KIMBERLY GOTTLIEB, )
)
        Plaintiff, )
)
v. ) Case No. 3:19cv673–HEH
)
C. R. BARD, INC., a New Jersey Corporation, )
BARD PERIPHERAL VASCULAR, INC., )
(a subsidiary and/or division of defendant C. R. )
BARD, INC.), an Arizona Corporation, )
)
        Defendants. )

**MEMORANDUM OPINION**
(Granting Defendants' Motion for Summary Judgment)

This products liability case is one of many filed against Defendants C.R. Bard and Bard Peripheral Vascular, Inc. (collectively "Defendants") concerning inferior vena cava ("IVC") filters that Defendants manufactured and sold to physicians around the country. IVC filters are placed inside the body in an effort to prevent blood clots from reaching critical organs such as the heart, lungs, or brain. Plaintiff Kimberly Gottlieb ("Plaintiff") was implanted with one of Defendants' IVC filters, which subsequently fractured and migrated. As a result, she alleges that she suffers from anxiety, abdominal pain, chest pain, and shortness of breath. The principal motion before the Court is Defendants' Motion for Summary Judgment (ECF No. 39).[1]

---

[1] Defendants also filed a Motion to Strike the Generic Opinions of David C. Feldstein, M.D.'s Report and Testimony (ECF No. 38) and eight Motions in *Limine* (ECF Nos. 73–80), and Plaintiff filed a Motion for Partial Summary Judgment (ECF No. 41), a Motion for Extension of Time to File Plaintiff's Opposition to Defendants' Motion to Strike the Generic Opinions of David C. Feldstein, M.D.'s Report and Testimony (ECF Nos. 67, 70), and a Motion in *Limine*

Plaintiff agreed to dismiss some of her original claims, leaving the following six claims at issue in Defendants' Motion for Summary Judgment: negligent design (Count IV); failure to warn (Count VII); breach of express warranty (Count X); breach of implied warranty (Count XI); fraudulent misrepresentation (Count XII); and punitive damages.[2] Defendants contend that summary judgment is proper for several reasons. First and foremost, Defendants argue that Plaintiff fails to establish proximate cause, and, therefore, all of her claims must be dismissed. In the alternative, Defendants raise specific deficiencies in each of Plaintiff's individual claims.[3] Plaintiff responds that her causation expert, David C. Feldstein, M.D. ("Dr. Feldstein"), provides sufficient testimony to establish proximate cause, and refutes any deficiencies in her individual claims.

Both sides have submitted memoranda supporting their respective positions. The Court heard oral argument on July 2, 2021, and the Motion is ripe for review. On July 8, 2021, to conserve the parties' and the Court's resources on the doorstep of a scheduled

---

(ECF No. 82). However, as the Court grants Defendants' Motion for Summary Judgment and dismisses this case in its entirety, these remaining motions are denied as moot.

[2] Plaintiff agreed to dismiss the following claims: strict liability (Counts I–III); negligent manufacture (Count V); negligent misrepresentation (Count VIII); negligence *per se* (Count IX); and fraudulent concealment (Count XIII). Plaintiff's Complaint (ECF No. 1) does not contain a Count VI.

[3] Specifically, Defendants argue that the learned intermediary doctrine bars Plaintiff's negligent design, failure to warn, and fraudulent misrepresentation claims, that Plaintiff's warranty claims should be denied due to a lack of evidence that Defendants made any warranties regarding the IVC filter, and that punitive damages are not available in this case. Further discussion of these arguments is unnecessary as Plaintiff's failure to establish proximate cause is fatal to all of her damages claims.

two-week trial beginning on July 26, 2021, the Court issued an Order granting Defendants' Motion for Summary Judgment for reasons more fully explained herein.

## I. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The relevant inquiry in the summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *Hogan v. Beaumont*, 779 F. App'x 164, 166 (4th Cir. 2019). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in the party's favor. *Anderson*, 477 U.S. at 248.

3

The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion. *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate . . . ." *Thompson Everett, Inc. v. Nat'l Cable Adver.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). "[T]here must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (citing *Anderson*, 477 U.S. at 249–50). "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). When applying the summary judgment standard, courts must construe the facts in the light most favorable to the nonmoving party and may not make credibility determinations or weigh the evidence. *Holland*, 487 F.3d at 213.

Courts may make inferences based on expert testimony in the record. *See Textron Inc. ex rel. Homelite Div. v. Barber-Colman Co.*, 903 F. Supp. 1558, 1565 (W.D.N.C. 1995). "Thus, the inferences a court is asked to draw by expert testimony must be reasonable in light of competing inferences." *Id.* "Neither the factual assumptions underlying an expert's opinion nor the expert's inferences from the facts assumed are

4

automatically established by the absence of directly countering expert opinion." *Erie Ins. Exch. v. Stark*, 962 F.2d 349, 353 (4th Cir. 1992). "The credibility of competing experts is a question for the jury only if the party with the burden of proof has offered enough evidence to sustain a verdict in its favor." *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993).

## II.  BACKGROUND

Defendants specialize in designing, manufacturing, and marketing medical devices. Plaintiff asserts that she sustained injuries following implantation of one of Defendants' IVC filters. This case is one of many filed and consolidated in a multidistrict litigation proceeding ("MDL") against Defendants arising from their design and manufacture of IVC filters. On September 17, 2019, after determining that this case no longer benefitted from centralized proceedings, the MDL court transferred the matter back to this Court for trial (ECF No. 5).

IVC filters are small devices designed to catch blood clots before they reach the heart and lungs. The filters are placed in the IVC, which is a central vein that returns blood to the heart from the lower body. IVC filters have been aptly described as looking like "the frame of an umbrella turned inside out by the wind." *In re Bard IVC Filters Prod. Liab. Litig.*, 969 F.3d 1067, 1071 (9th Cir. 2020). The filter is placed in the IVC with the frame facing downward, so that the filter catches blood clots coming up from the lower body. Defendants have designed and manufactured multiple versions of IVC filters, including the Recovery, G2, G2X, Eclipse, Meridian, and Denali.

For purposes of summary judgment, the parties agree to the following facts. Michael Andrew Grimm, M.D. ("Dr. Grimm") implanted Plaintiff with a Meridian IVC filter on May 24, 2012, in advance of a planned hiatal hernia repair surgery. (Pl.'s Resp. Opp. at Ex. 1 ¶ 3, ECF No. 54-1.) Dr. Grimm recommended the IVC filter to Plaintiff before her hernia surgery because she had previously experienced deep vein thrombosis ("DVT"), a form of blood clot, during a prior knee surgery. (*Id.* at ¶ 15.) Plaintiff's IVC filter ultimately perforated her IVC, fractured, and migrated. (*Id.* at ¶ 17.)

Plaintiff brings products liability claims based on design defect, failure to warn, and misrepresentation, and seeks punitive damages. She alleges that, due to the IVC filter's perforation, fracture, and migration, she will require regular scans to monitor potential complications, and she suffers from abdominal pain, chest pain, shortness of breath, and emotional drain. (Pl.'s Mem. Opp. 2–3, ECF No. 53.) The parties agree that Virginia law applies to this Court's analysis.[4] Defendants argue that neither Plaintiff nor any of her doctors can attribute her heart problems, high blood pressure, or anxiety to her filter. (Defs.' Mem. Supp. 1, 4, ECF No. 40.) Plaintiff must demonstrate that the product not only is defective, but also that the defect is the cause of her injury. Defendants

---

[4] Both parties relied on Virginia law in their briefs and arguments to the Court. (Defs.' Mem. Supp. 10, ECF No. 40; Pl.'s Mem. Opp. 8.) Furthermore, according to Virginia's choice-of-law rules, generally the substantive law of the place of the wrong applies to Plaintiff's claims. *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986). The place of the wrong in medical device products liability cases is generally the place of implantation. *Gen. Assur. of Am., Inc. v. Overby-Sewell*, 533 F. App'x 200, 206 (4th Cir. 2013); *Porter v. DePuy Orthopaedics*, No. 3:19CV7, 2019 WL 3979656, at *5 (E.D. Va. Aug. 6, 2019). According to Plaintiff, Dr. Grimm is a Virginia physician (Pl.'s Mem. Opp. 2), and the IVC filter in this case was placed in Virginia in the Reston Hospital Center (*see* ECF No. 51-11). Therefore, Virginia law guides this Court's analysis.

6

contend that her claims fail because she is unable to prove causation. Plaintiff responds that her "expert, Dr. Feldstein, having reviewed . . . the Meridian filter design and testing, [Plaintiff's] medical records, and relevant medical literature, performed a differential diagnosis[5] based on his extensive medical experience with IVC filter placement and retrieval to conclude that the Meridian filter caused [Plaintiff's] injuries." (Pl.'s Mem. Opp. 12.) Plaintiff maintains that this is sufficient evidence to establish causation.

### III. ANALYSIS

To prevail in a products liability suit in Virginia, Plaintiff must establish that: (1) the alleged defect existed when the product left the manufacturer's possession and the product was not substantially altered between that time and the time the injury occurred; and (2) "with 'reasonable certainty' . . . the defendant caused the plaintiff's injuries." *Stokes v. L. Geismar, S.A.*, 815 F. Supp. 904, 907 (E.D. Va. 1993) (quoting *Boyle v. United Techs. Corp.*, 792 F.2d 413, 416 (4th Cir. 1986)). "[A]s a threshold matter, for [a plaintiff] to proceed under any theory of recovery, [she] must, at the very least, present

---

[5] "Differential diagnosis is 'a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the most probable one is isolated.'" *Zellers v. NexTech Ne., LLC*, 533 F. App'x 192, 197 (4th Cir. 2013) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir. 1999)). In essence, differential diagnosis is a process of elimination involving an analysis of an array of possible causes for a patient's symptoms. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 643–44 (4th Cir. 2018). Accordingly, a reliable differential diagnosis inherently requires consideration of other factors that could have caused the injury. *Id.* at 644. "A rose by another name may smell as sweet—but simply calling an analysis a differential diagnosis doesn't make it so." *Id.* at 643. Plaintiff here provides no evidence to support the allegation that Dr. Feldstein performed a differential diagnosis. Dr. Feldstein's report does not reference a differential diagnosis, nor does he mention differential diagnosis in the limited portions of his deposition received by the Court. Her mention of such an analysis in her briefing alone is insufficient to buttress her argument that she has sufficiently alleged causation.

7

enough credible evidence for [the Court] to conclude that a genuine issue of material fact exists as to whether the . . . device was the cause of the injuries alleged." *Hartwell v. Danek Med., Inc.*, 47 F. Supp. 2d 703, 707 (W.D. Va. 1999). "The Supreme Court of Virginia has held that '[t]he proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Moyers v. Corometrics Med. Sys., Inc.*, 210 F.3d 361 (4th Cir. 2000) (table) (quoting *Banks v. City of Richmond*, 348 S.E.2d 280, 282 (Va. 1986)) (finding insufficient causation evidence to create a genuine dispute of material fact in a products liability case when a medical monitor allegedly malfunctioned such that obstetric physicians were not alerted to an issue that resulted in a fetus's birth injury). Proximate cause is often left for the jury to determine, but it "becomes a question of law for the court when reasonable minds could not disagree about the conclusion to be reached." *Id.* "Evidence of proximate cause 'must be sufficient to remove the case out of the realm of speculation and conjecture and into the realm of legitimate inference before submitting it to a jury for its determination.'" *Id.* (quoting *Phillips v. Se. 4-H Educ. Ctr.*, 510 S.E.2d 458, 460 (Va. 1999)).

The Supreme Court of Virginia has not directly addressed whether, at the summary judgment stage in products liability cases, expert testimony is necessary for a plaintiff to prove that a genuine issue of material fact exists as to causation. However, Virginia Code § 8.01-20.1 requires expert testimony for issues beyond "the jury's common knowledge and experience." The Supreme Court of Virginia recently discussed

8

how courts should apply § 8.01-20.1, when determining the cause of aggravated preexisting medical conditions in *Summers v. Syptak*, 801 S.E.2d 422, 426–27 (Va. 2017). The plaintiff in *Summers* alleged that a physician's inappropriate comments made during the course of her treatment for preexisting psychological, emotional, and physical symptoms exacerbated her symptoms. 801 S.E.2d at 423–24. Finding that summary judgment was proper because the plaintiff presented no causation expert to support her allegation that malpractice aggravated her preexisting conditions, the court engaged in the following discussion:

> there is a name for the logical fallacy that assumes a causal relationship from a merely sequential one: "*post hoc ergo propter hoc*," which is Latin for "after this, therefore because of this." BLACK'S LAW DICTIONARY 12[0]5 (9th ed. 2009). To illustrate, one might erroneously reason that since a rooster crows each day at sunrise, the rooster causes the sun to rise. A more concrete historical example is the mistaken attribution of cholera epidemics to "miasma" exposure, that is, exposure to polluted fumes and toxic aromas. In fact, the disease is caused by bacterial contamination of water. *See* STEVEN JOHNSON, THE GHOST MAP (2006) (discussing the pioneering scientific work of London physicians in identifying the source of cholera epidemics).

801 S.E.2d at 427.

Another court in this District has similarly found expert testimony necessary to establish causation in products liability cases. *Sanyal v. Toyota Motor N. Am., Inc.*, No. 1:14CV960, 2015 WL 3650725 (E.D. Va. 2015). In *Sanyal*, the plaintiff was in a car accident allegedly caused by a defect in his Toyota Camry. *Id.* at *7. According to the plaintiff, the accident, and, by extension, the defect, aggravated his history of seizures. *Id.* After recognizing that Virginia courts have not established whether expert testimony is always necessary to establish causation in products liability cases, the court

9

nonetheless noted that, "in a products liability action, proof of causation must ordinarily be supported by expert testimony because of the complexity of the causation facts." *Id.* (quoting *Gauthreaux v. United States*, 694 F. Supp. 2d 460, 465 (E.D. Va. 2009)). Finally, in Virginia, when medical expert testimony is necessary, the expert must render his opinion to "a reasonable degree of medical probability." *Pettus v. Gottfried*, 606 S.E.2d 819, 825 (Va. 2005) (citing Va. Code § 8.01-399(B); *State Farm Mut. Auto Ins. Co. v. Kendrick*, 491 S.E.2d 286, 287 (Va. 1997)).

In this case, Plaintiff has presented no evidence that her IVC filter is the cause of her injuries. She contends that Dr. Feldstein concluded that her filter caused her abdominal pain, chest pain, shortness of breath, and emotional issues. (Pl.'s Mem. Opp. 2–3, 12.) The sole evidence before this Court regarding causation is Dr. Feldstein's expert report (ECF No. 54-5), and an excerpt from Dr. Feldstein's deposition (ECF No. 39-8). However, Dr. Feldstein does not render any causation opinion to a reasonable degree of medical probability that Plaintiff's alleged injuries were caused by her IVC filter. At the hearing, and in a Notice of Record Evidence of Reasonable Medical Certainty filed after the hearing (ECF No. 71), Plaintiff's counsel emphasized that Dr. Feldstein offered the opinions in his report to a "reasonable degree of medical certainty." (Feldstein Rep. 8, ECF No. 41-2.) This argument misses the mark. Plaintiff fails to provide any substantive expert testimony that her IVC filter caused her injuries. Dr. Feldstein stated his opinions to a reasonable degree of medical certainty, but the opinions offer mere speculation regarding the impact the filter may have on Plaintiff.

The relevant portion of Dr. Feldstein's report is as follows:

> 8. Because of the fracturing of [Plaintiff's] IVC filter, the penetration of the arms and legs through the caval wall into her duodenum and aortic wall as well as having one filter leg abutting her intervertebral disc, it is my opinion that [Plaintiff] will need to have recurrent CT scans every 2–3 years to re-evaluate filter leg penetration progression, as well as any embolization of the fractured leg. Any attempt to retrieve the filter will be complex and surgical in nature given limb penetration into surrounding structures and the leg fracture, as discussed above. She will also need to have close clinical follow-up with specific attention to worsening abdominopelvic pain, leg swelling, DVT/PE, chest pain and shortness of breath. The IVC filter leg penetration into her duodenum can cause exacerbation of her ongoing bowel issues.

(Feldstein Rep. 10.) The excerpt of Dr. Feldstein's deposition attached to Defendants' Motion for Summary Judgment similarly lacks any causation opinion. Only one page of his deposition was submitted, and in relevant part, reads as follows:

> Q: Doctor, it's your opinion that Mrs. Gottlieb's filter perforated the wall of her IVC, right?
> A: Yes.
> Q: And you also believe that one of the legs of the filter fractured, right?
> A: It did, yes.
> Q: And it migrated, in your opinion, just a little bit north of the retrieval hook, right?
> A: Yes.
> Q: Do you know whether the fractured leg has embolized any further?
> A: As the last imaging that I saw as of May 2020, that's as far as last I saw, so I don't know anything since then.

(Feldstein Dep., ECF No. 39-8.) Dr. Feldstein's only opinion regarding Plaintiff's alleged injuries is that "[s]he will . . . need to have close clinical follow-up." (Feldstein Rep. 10.) He provides no opinion whatsoever as to the cause of Plaintiff's symptoms. The specific cause of Plaintiff's alleged anxiety, chest pain, abdominal pain, and shortness of breath is certainly beyond the common knowledge and experience of an

11

average juror. *See* § 8.01-20.1. Furthermore, the cause of medical symptoms falls squarely in line with medical expert testimony routinely required in Virginia courts. *See Summers*, 801 S.E.2d at 426–27.

Although this case is the first in a Virginia federal court relating to Defendants' IVC filters to reach the summary judgment stage, federal courts have awarded summary judgment for failure to prove causation in other cases involving Defendants' products and in similar products liability cases. For example, a district court in Georgia granted Defendants' motion for summary judgment in part for lack of causation evidence in another MDL case involving Defendants' G2X IVC filter. *Milton v. C.R. Bard, Inc.*, No. 5:14CV351, 2021 WL 2483143, at *6–7 (M.D. Ga., June 17, 2021). The parties in *Milton* agreed that the plaintiff's causation expert provided sufficient testimony regarding causation of the plaintiff's pseudoaneurysm and the placement of his aortic cuff. *Id.* at *6. However, the court granted Defendants' motion as to all other claims, finding that the plaintiff's expert "does not testify that the complications resulting from [the plaintiff's IVC filter] actually caused his abdominal pain—he merely testifies that it is possible it did." *Id.*; *see also Bryant v. C.R. Bard, Inc.*, No. 2:13CV19730, 2017 WL 2350228, at *3 (S.D.W. Va., May 30, 2017) (granting a motion for summary judgment when the plaintiff could produce no admissible expert testimony regarding causation in a separate MDL involving a transvaginal surgical mesh that Defendants manufactured). Plaintiff shares the same Achilles' heel as the plaintiff in *Milton*. Dr. Feldstein's speculative testimony regarding the potential ramifications of Plaintiff's filter's movement is insufficient. Summary judgment is necessary here because Plaintiff provides no evidence that her IVC

12

filter caused any of her alleged injuries.

Other courts addressing the sufficiency of proximate cause evidence in similar contexts at the summary judgment stage have come to the same conclusion. The United States Court of Appeals for the Fourth Circuit found that summary judgment was proper in a products liability case in which the plaintiff alleged that the diphtheria, tetanus, and pertussis vaccine caused her seizures and developmental retardation. *Rohrbough v. Wyeth Lab'ys, Inc.*, 916 F.2d 970, 972 (4th Cir. 1990). Applying West Virginia law, the court found that none of the plaintiff's three experts—physicians in pediatrics and toxicology, pediatric neurology, and pathology—could testify to a reasonable degree of medical probability that the vaccine caused the plaintiff's condition. *Id.* at 972–73.

In *Hartwell*, the district court granted summary judgment because the plaintiffs' causation experts failed to provide sufficient medical evidence or reliable methodology to support their products liability claims under West Virginia law. 47 F. Supp. 2d at 716. There, two plaintiffs claimed that they suffered injuries caused by defective spinal fusion fixation devices. *Id.* at 704–06. Each plaintiff presented a causation expert, and "[t]he testimony of these two experts [was] all that [the] plaintiffs offer[ed] to make the obligatory connection between injury and defect." *Id.* at 708. Neither expert examined the plaintiffs, and both experts' testimony focused on whether the device implantation was warranted, as opposed to whether the implantation caused the plaintiffs' injuries. *Id.* The court concluded that, absent a sound causal determination, the case could not proceed. *Id.* at 715–16.

Though these courts applied the laws of other states, their reasoning is instructive

13

as Virginia imposes similar burdens on plaintiffs to prove causation by expert testimony. Applying Virginia law, a district court likewise found that summary judgment was appropriate when a lack of causation evidence created "a severe . . . void which prevent[ed] [the] plaintiff from satisfying his obligations under Virginia products liability law . . . ." *Stokes*, 815 F. Supp. at 911. The plaintiff in *Stokes* lost an eye in a work-related accident when a rail cutting saw manufactured by the defendants allegedly malfunctioned. *Id.* at 905. However, no one witnessed the accident and the plaintiff himself could not explain exactly what occurred. *Id.* Even assuming the product was defective, the court found that, because the plaintiff's experts admitted there were various possible explanations as to the cause of his injuries, the plaintiff was unable to create a jury issue as to causation. *Id.* at 908–09. Here, Plaintiff offers no expert testimony that her IVC filter caused her injuries, and is therefore unable to create a jury issue as to causation. Without any expert testimony that the complications associated with her IVC filter caused her alleged injuries, Plaintiff's claims must fail.

## IV. CONCLUSION

The Court recognizes the complications and risks associated with IVC filters taken on by Plaintiff and many others involved in this MDL, but Virginia law requires expert testimony establishing causation in medical device products liability cases. Conspicuously lacking any causation evidence, Plaintiff is unable to sustain a claim for damages. Therefore, and as previously ordered by this Court, the Court grants Defendants' Motion for Summary Judgment (ECF No. 39).

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

This case is CLOSED.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 28, 2021
Richmond, Virginia

15